JOHN VACCA, PLAINTIFF-RESPONDENT, v. WILLIAM STIKA, BOROUGH CLERK OF THE BOROUGH OF LITTLE FERRY, DEFENDANT-APPELLANT.

Argued April 30, 1956—Decided May 14, 1956.

*Mr. Alfred W. Kiefer* argued the cause for the defendant-appellant (*Mr. Christian Bollermann,* on the brief).

*Mr. James A. Major* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.   The question here is whether the plaintiff is entitled to compel the Borough Clerk of Little Ferry to issue to him a license to operate a used car lot on a parcel of land zoned for business but in violation of record deed restrictions imposed upon the land by the borough when it was the owner thereof.

The property in question was zoned for business pursuant to an ordinance adopted by the borough in 1937. In September 1940 the borough conveyed a large tract of land, including the lot in question, to Leonia Homes, Inc., and in so doing imposed certain restrictions on the use of the land. Among these restrictions it was provided that:

"No trades or business shall be carried on, on any part of the property conveyed herein, and the restrictions against trade and industry shall be construed to include the erection of signs and billboards.

These covenants and restrictions are to run with the land and shall be binding on all the parties and all persons claiming under them until January 1, 1966, at which time said covenants and restrictions shall terminate.

If the parties hereto or any of them, or their heirs or assigns, shall violate or attempt to violate any of the covenants or restrictions herein before January 1, 1966, it shall be lawful for any other person or persons owning any other lots in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant or restriction, and either to prevent him or them from so doing or to recover damages or other dues for such violations."

Thereafter the land was conveyed by Leonia Homes, Inc. to Bendix Homes, Inc. by a deed which repeated the restrictions and again provided that they were to run with the land and be binding upon all parties and all persons claiming under them until January 1, 1970, at which time they were to be automatically extended for successive periods of ten years unless a majority of the then owners decided to change them. The tract was then subdivided into about 147 lots, and approximately 100 homes were built in that community. One of these houses is now occupied by the plaintiff as a residence.

Immediately adjoining the plaintiff's residence on the south is a lot which was conveyed to him and his wife on September 9, 1955 by Bendix Homes, Inc. by a deed which provided that the conveyance was subject to zoning ordinances and restrictions of record.

On October 21, 1955, pursuant to the requirements of an ordinance adopted by the borough in 1948, the plaintiff

made application for a license to transact a used car business on that lot. The plaintiff's application was substantially in order and, except for the deed restrictions which were known to the defendant, we presume the license would have been issued. But no action was taken on the application and the plaintiff thereupon brought this action in lieu of our former prerogative writ of *mandamus* in the Superior Court to compel an act which he alleges permits of no discretion on the part of the defendant.

Before the defendant had an opportunity to answer the complaint, the plaintiff moved for a summary judgment. The defendant countered with a similar motion. On these motions a series of affidavits were submitted bringing out the facts which we have already stated. The plaintiff, in an attempt to justify his position in light of the knowledge of the restrictions with which he was charged, asserted that these restrictions had systematically been disregarded and violated with impunity. Presumably this was an attempt to convince the court that the borough had waived any rights it had to enforce the deed restrictions. In reply an affidavit by the mayor of the borough showed that only one of the alleged uses contrary to the restrictions was on property covered by the restrictions in issue and as to this he denied that there had been any waiver, release or discharge of any of the restrictions. The mayor stated that the borough owned 13 lots in that community which were covered by these restrictions and that it was then contemplating the sale of some of them for residential purposes.

The trial judge, taking a rather limited view of the controversy, disposed of the issue in favor of the plaintiff on the ground that in the exercise of its police power under which the borough was acting in regulating used car lots, it could not take cognizance of the restrictions on the use of the property imposed by private contract, omitting all considerations as to whether such judgment would be a just and complete resolution of the entire controversy likely to be produced as a result of the failure by the defendant to issue the license.

The defendant appealed to the Appellate Division of the Superior Court and we certified the matter on our own motion while pending there.

The philosophy underlying our present system of procedure is not something to be recognized in the abstract, to be much discussed but less often followed and applied. The evils of delay, technicalities and multiplicity of action in order to obtain complete relief in the courts were the critical elements that led to the reform movement in this State, of which the adoption of our Constitution of 1947 and new rules of procedure were only the beginning. The important lesson we all had to learn was that we must always keep foremost in our minds the need of a progressive system for the administration of justice if we are not gradually to relapse into the old ways of delay, technicalities and surprise. To prevent this is not only the function of the annual Judicial Conference, *R. R.* 1:23–1, but also the day to day obligation of the bench and bar. The narrow basis upon which the present action was commenced by the plaintiff, was suffered to proceed by the defendant and upon which it was decided below gives evidence of the fact that we have not yet reached our goal.

This case presented a controversy which could not by any stretch of the imagination be resolved completely as to all concerned simply by an action in lieu of prerogative writ to compel the borough clerk to issue the license. Aside from the issues of right to the relief sought raised by that action, there was the question relating to the enforceability of the restrictions imposed upon the land by the borough not only from the standpoint of reasonableness of the restrictions but also from the standpoint of reasonableness of the borough's action in creating them in light of the then recently created business zone. There was the question as to whether or not there had been a waiver by the borough of its right to enforce the restrictions if valid, and there was also the question of the liability of the borough to other property owners, who had a right to demand compliance with the restrictions, if it issued a license to conduct an

activity contrary to that permitted. The granting of the relief to the plaintiff was merely the trigger which, in modern language, would start the chain reaction of other litigation to resolve the balance of the issues raised by the entire controversy.

We believe that it was the duty and obligation of the plaintiff, if he thought himself entitled to conduct this business on the land in question, to bring his action to resolve all the matters in one suit. Not having done so, the Borough of Little Ferry, who was not in fact a foreigner to the suit and whose mayor and borough attorney had actual knowledge of the suit brought and took an active part in the defense of it on behalf of the borough clerk, should have sought to have the other issues presented for decision. It is no answer to say that the borough had no opportunity to do so because the plaintiff moved for summary judgment before the borough clerk had opportunity to answer or the borough had a chance to intervene. No request was ever made nor was such a desire even intimated by the borough or any of its officers. Finally, it would have been better for the trial court to withhold relief pending the presentment of all the issues in one suit, after which, if the borough clerk was ultimately compelled to issue the license, there would be no further direct complications in the courts.

This is the general view that we hold of this case and of the disposition below. But specifically, there was good reason to deny the relief sought by the plaintiff; first, because the record showed that the plaintiff did not have a clear right to relief, and second, because a judgment in lieu of *mandamus* should not issue to compel the doing of a vain and fruitless act.

*Mandamus* is the appropriate remedy only in a case where the right to the performance of a ministerial act is clear and certain, *Gallena v. Scott,* 11 *N. J.* 231 (1953); *Eastern Boulevard Corp. v. West New York,* 124 *N. J. L.* 345–347 (*Sup. Ct.* 1940); *Provident Institution for Savings v. Castles,* 124 *N. J. L.* 50 (*Sup. Ct.* 1940). The plaintiff has not challenged the right of the borough to impose these

restrictions on this property, nor has he challenged the legal effect of these restrictions upon his use of the premises for the purpose covered by the license sought. Thus, with these rights which he agreed not to violate standing against him it cannot be said that his right to the license is clear, certain or unquestionable.

In *Raclin v. Village of Winnetka,* 369 *Ill.* 532, 17 *N. E.* 2d 324 (1938), a case close in point, the Supreme Court of Illinois very appropriately said:

"\* \* \* It is so well settled in this State as to require no citation of authority, that the petitioner seeking a writ of *mandamus* must show a clear right to the writ, and that, where serious consequences will result, the court may exercise discretion in granting or refusing the writ. (Cases cited.) Applying this rule to the record in this case, it will be seen that by the covenants of restriction in appellant's deed, to which they bound themselves by acceptance of the deed, they became bound by the restrictions contained in the Maher deed to Zimmer, \* \* \*. They further accepted the property subject to the limitations and restrictions of 'zoning and building laws and ordinances and building line restrictions and building restrictions and covenants and restrictions of record.' These were expressly made covenants running with the land. *Clearly they can scarcely show a right to the peremptory writ of mandamus to compel the issuance of a permit for the purpose of doing that which they covenanted should not be done.*

Counsel for appellants say that while it may be that the original grantors or other parties interested might prohibit the erection of these buildings, that question is not in the case, and does not give the village a right to raise that point. However, as indicated herein, since appellants must, if they procure the writ at all, show a clear right to it, and as evidence in the record shows they do not have that right, they cannot complain if the writ is not awarded. \* \* \*" (Emphasis supplied.)

▮▮ Further, at the particular stage of the controversy presented to the trial court it definitely appeared that the municipality, at least *prima facie,* had the right to enjoin any violation of the restrictive covenants created by it. Presumably, from the attitude of the officers of the borough evidenced by the affidavits submitted there and the argument before that court, it appeared that the borough planned to take such action. Even if the right of the plaintiff to the license was clear and certain, he might very well have gained

nothing by enforcing the issuance of the license. It was not the purpose of our former prerogative writ of *mandamus* to compel the doing of an idle act, *Beronio v. Pension Commission of Hoboken,* 130 *N. J. L.* 620 (*E. & A.* 1943); nor is it the purpose of our present action in lieu thereof to do so, *Gallena v. Scott, supra,* 11 *N. J.* 231, 238 (1953), *Sagarese v. Board of Health of Morristown,* 31 *N. J. Super.* 526 (*Law Div.* 1954).

Wholly apt are the guiding principles set forth by Mr. Justice Heher in *Beronio v. Pension Commission of Hoboken, supra,* 130 *N. J. L.* 620 (*E. & A.* 1943), where he said, at *page* 624:

> "Yet, for the furtherance of essential justice, the allowance of the remedy of *mandamus* is subject to certain well-defined qualifications. The writ issues to redress a wrong, not to promote one; to command the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief, or will be within the strict letter of the law, but in disregard of its spirit. * * * It may be refused where the result will be 'disorder and confusion, * * * or where the rights of third persons will be injuriously affected.' " (Citing cases.)

The judgment below is accordingly reversed without costs, and the matter remanded for plenary disposition of all of the issues relating to the plaintiff's right to relief after jurisdiction of the borough has been obtained; failing that, the action should be dismissed.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For affirmance*—None.