**James J. McDOWELL, Sr., Plaintiff,**

v.

**BOROUGH OF PINE HILL, Defendant.**

**Civ. A. No. 88–2900(SSB).**

United States District Court,
D. New Jersey.

May 8, 1990.

Frederick J. Gross Law Firm, Mount Ephraim, N.J., for plaintiff.

Robert E. Kennedy, Hannold, Caulfield, Marshall & McDonnell, P.A., Woodbury, N.J., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

BROTMAN, Senior District Judge.

This matter was tried to the court on an evidentiary record consisting solely of stipulated facts and unchallenged documentary exhibits. The court makes the following statement of facts and conclusions of law:

## I. STATEMENT OF FACTS

1. Plaintiff James J. McDowell, Sr. resides in the Borough of Pine Hill ("Borough"), at Lots 3A, 4A, 5A, and 6A, Block 99.C on the Pine Hill tax map.

2. Defendant Borough of Pine Hill is a municipal corporation of the State of New Jersey.

3. Plaintiff is entitled, by reason of an injury incurred while on active duty in the United States Navy and through no misconduct on his part, to disability compensation from the Veterans Administration and its successor, the Department of Veteran Affairs ("VA") pursuant to 38 U.S.C. §§ 310 *et seq.*

4. On or about November 20, 1978, plaintiff applied for a real property tax deduction pursuant to N.J.Stat.Ann. 54:4–8.11 (1986) and the Borough granted this application.

5. During the period 1980 through 1987, plaintiff inquired from Borough tax officials about his entitlement to the homestead exemption from real property taxes pursuant to N.J.Stat.Ann. § 54:4–3.30a (1986) but on each occasion was told that he was only entitled to the exemption if he was found to be 100 percent disabled by the VA.

6. Prior to 1987, from time to time, plaintiff requested of Borough tax officials application forms for a homestead tax exemption. Plaintiff was never refused an exemption form, but states he was told by Borough personnel that filling out such a form was senseless unless the VA had rated him totally disabled. The Borough Tax Collector states that, although she may have told plaintiff that he was not eligible unless the VA had determined that he was 100 percent disabled, it was her policy to offer an application anyway.

7. On February 12, 1987, the VA amended plaintiff's disability compensation award to reflect determination of a service-connected disability for neurosis. The letter states that the "combined evaluation for all service-connected disabilities is 70%." The letter further advises that plaintiff was entitled to receive compensation at the 100 percent rate because of unemployability due to service-connected disability. Plaintiff was awarded disability compensation retroactive to April 22, 1982.

8. On or about March 23, 1987, plaintiff filed his first application to the defendant Borough for a homestead tax exemption under N.J.Stat.Ann. § 54:4–3.30a.

9. Plaintiff's application under N.J.Stat. Ann. § 54:4–3.30a was denied by the Borough and the Camden County Board of Tax Appeals.

10. On August 10, 1988, the Tax Court of New Jersey entered a judgment in favor of plaintiff in which the court held that the lot in question was exempt from taxes for

the year 1987 under N.J.Stat.Ann. § 54:4–3.30a.

11. The Borough thereafter refunded plaintiff's 1987 tax payment and deemed that plaintiff is exempt from property taxes under N.J.Stat.Ann. § 54:4–3.30a for subsequent years.

12. In 1988, plaintiff applied to the defendant Borough pursuant to N.J.Stat.Ann. § 54:4–3.32 for retroactive exemption under N.J.Stat.Ann. § 54.4–3.30a.

13. On or about May 16, 1988, after a hearing before the Borough's governing body, that is, its mayor and council, the Borough denied plaintiff's application for retroactive application of the homestead exemption.

14. On or about March 22, 1989, the VA determined that plaintiff is totally and permanently disabled within the meaning of 38 C.F.R. § 4.16 and is entitled to disability compensation at a rate based upon a permanent 100 percent disability since April 22, 1980. The VA awarded plaintiff additional disability compensation retroactive to April 22, 1980.

15. Plaintiff amended his request for retroactive application of the homestead exemption to April 22, 1980. The Borough did not grant this application.

16. In 1980, plaintiff paid defendant $821.16 in real property taxes, of which the Borough retained $132.62 and transferred the balance to other taxing entities.

17. In 1981, plaintiff paid defendant $918.02 in real property taxes, of which the Borough retained $170.52 and transferred the balance to other taxing entities.

18. In 1982, plaintiff paid defendant $1069.91 in real property taxes, of which the Borough retained $173.42 and transferred the balance to other taxing entities.

19. In 1983, plaintiff paid defendant $1243.57 in real property taxes, of which the Borough retained $214.51 and transferred the balance to other taxing entities.

20. In 1984, plaintiff paid defendant $1281.71 in real property taxes, of which the Borough retained $235.70 and transferred the balance to other taxing entities.

21. In 1985, plaintiff paid defendant $1371.69 in real property taxes, of which the Borough retained $271.56 and transferred the balance to other taxing entities.

22. In 1986, plaintiff paid defendant $1482.53 in real property taxes, of which the Borough retained $382.72 and transferred the balance to other taxing entities.

23. None of the money that plaintiff paid to the defendant Borough between 1980 and 1986, inclusive, has been refunded to him.

24. The VA follows identical procedures in processing a disability compensation claim, irrespective of whether the veteran claims 100 percent disability.

25. As of March 1988, 57,399 Viet Nam era veterans out of 627,906 such veterans with service-connected disability, or approximately nine percent, were entitled to compensation at the 100 percent rate.

26. For the year June 30, 1988 to June 30, 1989, 30.9 percent of initial disability compensation claims (1,326 claims total) in the Newark, New Jersey regional VA office took more than six months to process; 18.1 percent of reopened claims took more than six months to process.

27. For the twelve month period spanning May 31, 1987 to May 31, 1988, 29.8 percent of initial disability compensation claims in the Newark, New Jersey regional VA office took more than six months to process; 19.2 percent of reopened claims took more than six months to process.

28. A veteran who is dissatisfied with the regional office determination may file a notice of disagreement, which triggers the right to a hearing and to a Board of Veterans Appeals determination. Plaintiff's case had a five year processing period.

29. On June 29, 1988, plaintiff filed a complaint in federal district court under 42 U.S.C. § 1983 alleging that the procedure used by the Borough violated his rights under the due process and equal protection clauses of the fourteenth amendment of the United States Constitution because it extinguished his property rights solely by reason of delay in the VA's decision-making process. Plaintiff also asserted causes

of action under state law that N.J.Stat. Ann. § 54:4–3.32 must be construed to require retroactivity whenever the VA's decision-making process causes delay rather than the veteran; that defendant's refusal to allow plaintiff a retroactive homestead exemption was arbitrary, capricious, and an abuse of discretion under New Jersey law; and that the arbitrary and capricious denial violated the due process clause and the equal protection clause of the United States Constitution because it constitutes a conflict of interest of constitutional dimension. Plaintiff asserts that his state law claims state a cause of action under New Jersey's statutory procedure for challenging local government action by filing a proceeding in lieu of prerogative writ as provided by Rule 4:69 of New Jersey's Rules Governing Civil Practice in the Superior Court and Surrogate's Court.

## II. CONCLUSIONS OF LAW

This court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983. Pendent jurisdiction exists for plaintiff's alternative state law claims.

### A. *New Jersey's Statutory Scheme.*

■ 1. Certain veterans are eligible for a real property tax deduction under N.J. Stat.Ann. § 54:4–8.11 (1986), which provides:

> Every person a citizen and resident of this State now or hereafter honorably discharged or released under honorable circumstances from active service in time of war in any branch of the Armed Forces of the United States and a surviving spouse as defined herein, during her widowhood or his widowerhood, and while a resident of this State, shall be entitled, annually, on proper claim being made therefor, to a deduction from the amount of any tax bill for taxes on real or personal property or both in the sum of $50.00 or if the amount of any such tax shall be less than $50.00, to a cancellation thereof.

*Id.*

2. The homestead exemption, N.J.Stat. Ann. § 54:4–3.30a (1986), provides:

> The dwelling house and the lot or curtilage wherein the same is erected, of any citizen and resident of this state, now or hereafter honorably discharged or released under honorable circumstances, from active service, in time of war, in any branch of the Armed Forces of the United States *who has been or shall be declared by the United States Veterans Administration or its successors to have a service-connected disability ... [determined by the VA] to be a total or 100% permanent disability ... shall be* exempt from taxation, on proper claim made therefor....

*Id.* (emphasis added).

3. As a prerequisite to granting a N.J. Stat.Ann. § 54:4–3.30a homestead exemption, the statutory scheme requires that the VA declare that the veteran is entitled to disability compensation at a rate based upon permanent 100 percent disability. *Id.*

4. A municipality can grant retroactive application of the homestead exemption under N.J.Stat.Ann. § 54.4–3.32 (1986), which provides that "The governing body of each municipality, by appropriate resolution, may return all taxes collected on property which would have been exempt had proper claim in writing been made therefor in the manner provided by this act; provided, however, that such refunds shall not be made for any year or portion thereof prior to the effective date of this act." *Id.*

### B. *Due Process.*

5. The due process clause of the fourteenth amendment to the United States Constitution provides that "No State ... shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The United States Supreme Court has stated that the due process clause "at a minimum [requires] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). This hearing "must be granted at a meaningful time and in a

meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

6. The timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). These interests include the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved. *Id.* In *Logan,* the Supreme Court held that an Illinois statute that extinguished plaintiff's cause of action for employment discrimination whenever the state administrative agency failed to schedule a hearing within 120 days violated the due process rights of plaintiff because the procedure did not give plaintiff an opportunity for a hearing at a meaningful time and in a meaningful manner. *Id.* The Court noted that plaintiff's interest in retaining his employment, disproving his employer's charges of incompetence or inability, and redressing an instance of alleged discrimination were all substantial interests. *Id.* at 434, 102 S.Ct. at 1157. The deprivation in *Logan* was final; plaintiff's claim was dismissed with prejudice and plaintiff was barred from filing a second complaint with the state administrative agency. *Id.* The Court noted that the procedure deprived persons of their claims in a random manner and, therefore, presented an unjustifiably high risk that meritorious claims would be terminated. *Id.* at 434–35, 102 S.Ct. at 1157. The Court found that the state's interest was insubstantial because there was no evidence that consideration of plaintiff's claim on the merits was unduly burdensome. *Id.*

7. Plaintiff here asserts that the statutory scheme denies him a hearing at a meaningful time and in a meaningful manner. Plaintiff, however, had a hearing before the mayor and the council of the defendant Borough. The Borough denied plaintiff's request for retroactive application of the homestead exemption after this hearing. This proceeding occurred at a meaningful time because, at the time of the hearing, the Borough had the power to provide the relief plaintiff sought and to make plaintiff whole. That it denied plaintiff's application does not render the proceeding "meaningless."

■ 8. Additionally, until the hearing before the mayor and council, plaintiff was not *"finally* deprived of a protected property interest." *See Logan,* 422 U.S. at 433, 102 S.Ct. at 1156. Although plaintiff contends that the delay in the VA's decision-making process caused him to lose his right to appeal to the New Jersey Tax Court each year under N.J.Stat.Ann. §§ 54:3–21 *et seq.,* plaintiff's cause of action was not extinguished by the delay. Plaintiff still had recourse because he could apply to the Borough directly for retroactive application of the exemption.

9. Notably, plaintiff did not apply for the homestead exemption until some time in 1987. Thus, the Borough did not deprive plaintiff of *any* property interest until it first denied his application for the retroactive homestead exemption in 1988. Even if plaintiff had made his request for each tax year before 1987 in the year in which the tax was due, the Borough did not "finally deprive" him of a property interest until it held a hearing and denied his application for the retroactive exemption. Any denial of plaintiff's request for the homestead exemption before the 1988 hearing, such as refusal to give plaintiff the appropriate forms, was not "final."

10. Additionally, at the hearing, plaintiff had the opportunity to present the merits of his case. The denial by the Borough, therefore, did not result from an arbitrary procedural deadline. The decision of the Borough did not destroy plaintiff's property interest by operation of law. The Borough considered the merits of plaintiff's application and, in its discretion, denied the application. Thus, *Logan* is clearly distinguishable. The Borough did not "extinguish a citizen's property rights solely by reason of delay in the official decision-making process." Amended Complaint at ¶ 25.

11. The state's interest in its procedure, while not compelling, is not insubstantial.

The New Jersey Tax Court has noted that "strict adherence to statutory requirements is mandated because [tax matters] involve the exigencies of taxation and the administration of government." *BPUM v. City of Camden*, 9 N.J. Tax 490, 504 (1988). Here, the Borough asserts that the monies collected from plaintiff during the years 1980 to 1986 have been distributed to other taxing authorities or spent as part of the Borough budget. Because the Borough was not on notice of plaintiff's request for retroactive application of the homestead exemption until 1987, the taxes collected during 1980 through 1986 were spent as part of the yearly budget rather than segregated in anticipation of plaintiff's claim.

12. By comparison, plaintiff's interest here is only pecuniary. Plaintiff does not seek to vindicate himself from allegations that he is incompetent or to redress discrimination in employment, as did the plaintiff in *Logan*. As such, plaintiff's interests are less compelling and *Logan* is not controlling here.

13. Plaintiff also maintains that, under *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), the determination by the Borough's elected officials whether to grant retroactive application of the exemption is an "unconstitutional conflict of interest," that denies him due process. In *Ward*, the United States Supreme Court held that petitioner was denied a trial before a disinterested and impartial judicial officer in violation of the due process clause of the fourteenth amendment, where petitioner was compelled to stand trial for two traffic offenses before the mayor, who was responsible for village finances and whose court, through fines, forfeitures, costs, and fees, provided a substantial portion of the village's funds. *Id.* at 61–62, 93 S.Ct. at 83–84. Plaintiff argues that the elected officials of the council and the mayor have a disqualifying political interest in denying plaintiff a refund because the only way to refund plaintiff's tax payments would be to increase the taxation of all other property owners, which would not further their political aspirations.

14. Plaintiff's argument reflects a misunderstanding of the Court's holding in *Ward*. First, the mayor and council members of the Borough acted in a legislative, not judicial, capacity when they denied plaintiff's request for a refund. Plaintiff was in no way denied a "trial before a disinterested and impartial judicial officer." The case offers no support for plaintiff's premise that a dual role as executive and legislator is an unconstitutional conflict of interest because political concerns would influence the outcome of an elected official's action. In fact, in every determination distributing the tax burden among constituents, elected officials walk a political tightrope. The argument that such actions constitute an "unconstitutional conflict of interest" is absurd.

15. Additionally, even if the mayor and council acted in a judicial capacity here, *Ward* is not controlling because plaintiff is not a criminal defendant. As the *Ward* Court stated, "the mere union of the executive power and the judicial power in [the judicial officer] can not be said to violate due process of law." *Id.* at 60, 93 S.Ct. at 83. The test is whether the dual role is one "which would offer a possible temptation to the average man [or woman] as a judge to forget the burden of proof required to convict the defendant, or which might lead him [or her] not to hold the balance nice, clear and true between the State and the accused." *Id.* (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)). While civil litigants are also entitled to adjudication of their disputes by a fair and impartial judge, the holding in *Ward* concerns criminal defendants and, therefore, does not support plaintiff's contention that the Borough's actions here are barred by *Ward*.

16. This court concludes that New Jersey's statutory procedure, by which the VA's finding of total disability conclusively determines the applicability of the homestead exemption and by which municipalities determine its retroactive applicability, does not violate the due process clause of the United States Constitution. Additionally, the political interests of the elected members of the council and the mayor do not create an "unconstitutional conflict of

interest" that denied plaintiff's due process rights.

## C. *Equal Protection.*

■ 17. Plaintiff claims that the statutory scheme violates the equal protection clause of the fourteenth amendment to the United States Constitution. He maintains that he is a member of a class of totally disabled veterans whose claims of disability are delayed by the VA. Plaintiff asserts that the denial of retroactive benefits to those totally disabled veterans whose determinations the VA delayed, whereas totally disabled veterans whose claims the VA determined quickly would receive mandatory exemptions, is arbitrary and capricious.

18. Plaintiff's equal protection claim does not implicate fundamental constitutional rights nor create suspect classifications, therefore, this court must review the statutory scheme for rationality. *United States v. Sperry Corp.,* —— U.S. ——, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989). Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose. *Regan v. Taxation Without Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983). The statutory scheme here permits the Borough to deny retroactive application of the homestead at its discretion but requires that the Borough grant a prospective exemption once the VA makes its determination which, according to plaintiff, distinguishes veterans whose claims the VA determined "quickly" from those whose claims the VA determined "slowly."

19. Although plaintiff's definition of the statutory classification appears vague because it relies on characterizations of the process as "slow" or "quick," this definition of the class does not bar equal protection analysis. In each tax year, the veteran has a finite date by which he or she must pay taxes and on which he or she may no longer appeal the Borough's tax bill to the New Jersey Tax Court. On that date, the veteran has either received a determination from the VA or has not received a determination from the VA. Those who have received a determination may seek the mandatory, prospective application of the homestead exemption. Those who have not received a determination must wait to seek retroactive application of the homestead exemption. The court, therefore, will examine the validity of this classification of totally disabled veterans who, in any one tax year, have not received a determination from the VA on the date their taxes become due and the right to appeal to the New Jersey Tax Court is extinguished.

20. On its face, the statutory scheme does not violate the equal protection clause. The United States Supreme Court has often addressed equal protection challenges to tax legislation:

> The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized.... [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.

*Madden v. Kentucky,* 309 U.S. 83, 87–88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940) (footnotes omitted), *quoted in Regan v. Taxation Without Representation,* 461 U.S. at 547–48, 103 S.Ct. at 2001–02. *See also San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40–41, 93 S.Ct. 1278, 1300–01, 36 L.Ed.2d 16 (1973); *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359–60, 93 S.Ct. 1001, 1003–04, 35 L.Ed.2d 351 (1973).

21. The New Jersey legislature has determined that those totally disabled veterans who do not have determinations from the VA on the date on which their taxes are due and who may no longer appeal the municipality's tax bill shall be provided an opportunity to seek retroactive application of the homestead exemption rather than prospective application of the homestead exemption. Given that federal courts are greatly deferential to the state legislatures in matters concerning taxation and equal protection, *see Regan v. Taxation Without Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 40–41, 93 S.Ct. 1278, 1300–01, 36 L.Ed.2d 16 (1973); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359–60, 93 S.Ct. 1001, 1003–04, 35 L.Ed.2d 351 (1973); *Madden v. Kentucky*, 309 U.S. 83, 87–88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940), this court concludes that the classification here has a rational basis; therefore, it does not violate plaintiff's rights under the equal protection clause. The Borough has asserted that, for those veterans who have not yet received VA determinations, the money collected as taxes is distributed to other taxing authorities or allocated in the Borough's yearly budget. If put on notice of a veteran's application to the VA for disability determination, the Borough can set aside sufficient funds in each tax year to permit retroactive application of the homestead exemption. Where no notice is given, or where no funds are set aside, the Borough has the discretion to deny retroactive application of the exemption. The statutory scheme gives the Borough discretion, rather than automatic retroactive applicability of the homestead exemption, which permits the Borough to distribute and to spend its tax revenues according to local needs at the time those needs arise. The scheme, therefore, serves the governmental purpose of allowing sufficient flexibility to the local government, which is aware of particular, unique local concerns, to budget and to spend its tax revenues in accordance with community objectives in a timely manner. Such a purpose is not arbitrary and capricious.

### D. Plaintiff's Claims under New Jersey Law.

22. Plaintiff also seeks relief under New Jersey's statutory procedure for challenging local government action by filing a proceeding in lieu of prerogative writ as provided by Rule 4:69 of New Jersey's Rules Governing Civil Practice in the Superior Court and Surrogate's Court. Plaintiff seeks to set aside the Borough's refusal to grant retroactivity and to require the Borough to grant retroactivity to plaintiff. Specifically, plaintiff's complaint asserts the following state law claims:

As and for a second cause of action, N.J.S.A. 54:4–3.32 does not grant defendant unfettered discretion to allow or deny retroactive exemption under N.J.S.A. 54:4–3.3.a; to preserve its constitutionality under *Logan*, N.J.S.A. 54:4–3.32 must be construed to require retroactivity whenever the delay has been in the VA's decision-making process, and to permit denial of retroactivity only when (and to the extent that) the delay has been in the veteran's notifying the municipality of the Veteran Administration's determination of disability.

As and for a third cause of action, the defendant's refusal to allow plaintiff a homestead tax exemption retroactive to 1982 was arbitrary, capricious and an abuse of discretion under New Jersey law.

Amended Complaint at ¶¶ 25–26. Apparently, plaintiff claims that this court, under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), must interpret the statutory scheme as requiring that the Borough grant retroactive application of the homestead exemption when the delay in applying for the exemption is caused by the VA and not by the veteran-applicant. If this premise is true, the Borough has no discretion to act and must award retroactive application of the exemption. Such an act would be ministerial; thus, this court could issue a writ of mandamus compelling the Borough to award retroactive application. *See Vacca v. Stika*, 21 N.J. 471, 476, 122 A.2d 619 (1956). *Logan*, however, is clearly distinguishable from the case at bar and does

not compel this court to interpret the New Jersey statutory scheme as plaintiff suggests. This court has already determined that, notwithstanding *Logan*, the statutory scheme does not deny plaintiff his rights under the due process and equal protection clauses of the fourteenth amendment. The Borough, therefore, properly retains discretion to deny plaintiff's request for retroactive application for the homestead exemption under N.J.Stat.Ann. § 54:4–3.30a.

23. A prerogative writ in the nature of mandamus is available only where there is a clear and definite right to performance of a ministerial duty that is, in essence, mandatory and final and wholly free of an element of discretion. *Case v. Daniel C. McGuire, Inc.*, 53 N.J.Super. 494, 498, 147 A.2d 824 (1959). This court could not issue a prerogative writ of mandamus to compel the Borough to grant plaintiff's request for retroactive application for the homestead exemption because such action is committed to the discretion of the Borough; therefore, it must deny plaintiff relief under his action in lieu of prerogative writ.

24. Additionally, plaintiff claims that the action of the Borough in denying his request was arbitrary and capricious and, therefore, this court may set aside the Borough's decision. Legislative action of municipal and county bodies is presumed valid and will be upheld in the absence of sufficient proof to overcome the presumption. *Witt v. Gloucester County Board of Chosen Freeholders*, 94 N.J. 422, 430, 466 A.2d 574 (1983) (citing *Kozesnik v. Montgomery Township*, 24 N.J. 154, 167, 131 A.2d 1 (1957)). A court may intervene "only when unreasonableness is clearly established." *Id.* (citing *Kennedy v. City of Newark*, 29 N.J. 178, 185, 148 A.2d 473 (1959)). Here, when the Borough denied plaintiff's request for retroactive application of the homestead exemption, it acted in a legislative capacity.

25. The Borough asserts that its actions were not arbitrary and capricious because it currently suffers from budget constraints, it did not have notice of plaintiff's claim until 1987, and that the taxes collected had been properly distributed or spent. To rebut the presumption that the legislative action is valid, plaintiff asserts "Pre-cisely because it works a denial of due process and of equal protection to deny plaintiff a refund under N.J.S.A. 54:4–3.32 of taxes previously paid, the Borough's refusal was arbitrary, capricious, an abuse of discretion and contrary to law." Plaintiff's Trial Brief at 17. This court, however, has previously determined that denial of retroactive application does not violate plaintiff's rights under the due process clause and the equal protection clause of the fourteenth amendment. Plaintiff, therefore, has failed to meet his burden to show that the action of the Borough was arbitrary and capricious. This court will not set aside the decision of the Borough.

## III. CONCLUSION

This court concludes that New Jersey's statutory procedure, by which the VA's finding of total disability conclusively determines the applicability of the homestead exemption and by which municipalities determine its retroactive applicability, does not violate the due process or equal protection clauses of the fourteenth amendment to the United States Constitution. Additionally, the political interests of the elected members of the council and the mayor did not create an "unconstitutional conflict of interest" that denied plaintiff's due process rights.

Likewise, the distinction found in the statutory scheme that distinguishes veterans who have received determinations from the VA from those who have not serves the governmental purpose of allowing sufficient flexibility to the local government to budget and to spend its tax revenues in accordance with community objectives in a timely manner. Such a purpose is not arbitrary and capricious.

This court will deny plaintiff relief under his action in lieu of prerogative writ because it could not issue a prerogative writ of mandamus to compel the Borough to grant plaintiff's request for retroactive application for the homestead exemption as such action is committed to the discretion of the Borough. Additionally, plaintiff has failed to meet his burden to show that the action of the Borough was arbitrary and capricious; therefore, this court will not set aside the decision of the Borough.

For the foregoing reasons, judgment is entered in favor of the defendant Borough of Pine Hill and against plaintiff James J. McDowell.

An appropriate order will be entered.