280 N.J. Super. 169 (1995)
654 A.2d 1024
BARRIE B. ELLISON, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF CARL B. ELLISON; LOUIS FRIEDMAN; AND CHERYL FRIEDMAN T/A FRIEDELL ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
SCHENCK, PRICE, SMITH & KING, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1995.
Decided March 16, 1995.
*170 Before Judges DREIER and BRAITHWAITE.
Herbert J. Stern argued the cause for appellants (Stern & Greenberg, attorneys; Mr. Stern, David S. Stone and Howard D. Cohen, on the brief).
Thomas C.C. Humick argued the cause for respondent (O'Donnell, Kennedy, Vespole, Piechta & Trifiolis and Schenck, Price, Smith and King, attorneys; Leon B. Piechta, Mr. Humick and M. Sheilah O'Halloran, on the brief).
The opinion of the court was delivered by BRAITHWAITE, J.S.C. (temporarily assigned).
Plaintiffs appeal from an order for summary judgment dismissing their complaint for legal malpractice against the defendant law firm, on the ground that it is barred by the statute of limitations, N.J.S.A. 2A:14-1. We affirm.
*171 This malpractice action arises out of two ground leases of unused cemetery land executed in 1964 and 1965 between plaintiffs' predecessor, Carl B. Ellison, and the Evergreen Cemetery, a cemetery association. Plaintiff, Barrie B. Ellison is the son of Carl B. Ellison, now deceased. Plaintiffs Louis Friedman and Cheryl Friedman along with Barrie B. Ellison are the partners of plaintiff partnership, Friedell Associates, successor in interest and subsequent assignee of Carl B. Ellison. This case is related to Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 628 A.2d 793 (App.Div. 1993). Inasmuch as many of the facts are described in our earlier opinion, we will only recite those necessary for a resolution of this matter.
In 1964 and 1965, Carl B. Ellison leased large tracts of unused cemetery land for development purposes. At that time, Ellison was represented by defendant who also represented Evergreen. In fact, a partner of defendant was a member of the cemetery's board of trustees. Both ground leases run until January 1, 2009, and have provisions permitting the decennial redetermination of the annual rental beginning on January 1, 1979, in "an amount equal to a fair return on the appraised value of the land (excluding all buildings and improvements)." Disputes concerning the redetermination of rent are to be decided by arbitration. The leases also allow plaintiffs to sublet the lands with the consent of Evergreen and permit the construction of building and other improvements which upon completion become the property of Evergreen.
In 1967, in accordance with the lease, plaintiffs entered into a twenty year sublease with Downs Motors, Inc., an automobile dealership. The sublease provided for the construction of the dealership building with an annual rental of $17,500 plus ten percent of the construction cost estimated at $544,000. The Downs sublease had a rental redetermination provision for any renewal period. However, the rent was only to be decreased. Any renewal rental would be equal to seventy-five percent of the annual rent paid during the initial twenty year term. Defendant *172 represented plaintiffs in negotiating and executing the Downs sublease.
Under the 1979 decennial redetermination, Ellison's annual rental to Evergreen was increased twofold. However, the new rental was still less than the rent received from Downs. Although Ellison still made a profit from the Downs sublease, the arrangement was less profitable. The 1989 decennial ground lease determination was a different story. Again the base rent was increased, but now the new rental exceeded the rent to be received from Downs. "On August 18, 1992, the arbitrators set the fair rental value for the ten year period beginning January 1, 1989 at $182,880 per year, with 7% percent interest on arrears since that date." Ellison v. Evergreen, supra, 266 N.J. Super. at 78, n. 2, 628 A.2d 793. As a result of the 1989 redetermination, Ellison's arrangement with Downs was unprofitable.
In January 1992, plaintiffs commenced a declaratory judgment action against Evergreen to invalidate the ground leases asserting that they were not aware that Evergreen was without legal authority to enter into the leases until December 1991, when plaintiffs were advised by their new attorneys (Stern and Greenberg).[1] In addition, the complaint sought reformation of the leases along with damages. The damages sought were inter alia reimbursement of all costs and expenses for construction and maintenance of buildings and improvements constructed pursuant to the ground leases and sublease.
The defendant herein was not named as a party in the 1992 action. However, in the suit, plaintiffs alleged that in reliance upon defendant's advice they believed there were no legal impediments to Evergreen's leasing the property and in reliance thereon consummated the leases and developed the property at considerable expense. Plaintiffs further asserted that they believed that *173 defendant's joint representation during the lease transactions and the fact that one of defendant's partners served as a member of Evergreen's board of trustees may have contributed to their lack of knowledge that Evergreen lacked the legal capacity to consummate the lease transactions.
In July 1993, we affirmed the trial court's grant of summary judgment dismissing plaintiffs' 1992 complaint against Evergreen. Ellison v. Evergreen, supra. We did not decide whether the statutory scheme in effect when the ground leases were executed in the 1960's "made a lease of unused cemetery land void as an ultra vires act." Id. at 82, 628 A.2d 793. Instead we simply held that plaintiffs were estopped from challenging the validity of the ground leases with Evergreen based upon its alleged lack of statutory authority to enter into the 1964, 1965 and 1968 leases. Id. at 83-84, 628 A.2d 793.
We reasoned as follows:
The 1971 adoption of the Title 8A revision of the cemetery laws expressly permitted such leases to be made.... [A]t the very least this statutory amendment permitted ratification of any previous ultra vires act. For some nineteen years [after 1971] the parties, through their conduct, may be deemed to have ratified their ongoing lease relationship. Even though plaintiffs [Ellison] claim that they were unaware until December 1991 of the asserted lack of [statutory] authority they attribute to Evergreen to lease, they should have known that which was readily knowable [after 1971] from available statutory law.... Indeed, they did not raise the issue on at least two prior occasions involving litigation of these leases [1979 and 1989] after adoption of the 1971 revision and the 1973 amendments to the cemetery statute. Merely because plaintiffs obtained a new attorney in December 1991 who projected a new theory to attempt to renegotiate the rental provisions of the leases [with Evergreen] is of no consequence to the estoppel bar.
[Ibid.]
In this case, plaintiffs allege a number of actions of defendant constitute negligence and therefore entitle them to relief. They assert, inter alia, that defendant failed to advise them that Evergreen was without statutory authority to enter into the ground leases when the leases were executed and that defendant further failed to advise them that the cemetery statute was amended in 1971 to permit such leasing. Moreover, they contend that defendant "failed, refused and neglected to include an escalation *174 or rent adjustment clause in the Downs' sublease to cover future increases" in the rental due to Evergreen knowing that plaintiffs were relying on the sublease income as the source to pay the ground rent to Evergreen. Plaintiffs seek damages, one measure of which is the difference between the income received from the Downs' sublease and the rent paid to Evergreen. Plaintiffs' complaint does not set forth with specificity any other measure of damages but it is reasonable to assume from a review of the complaint that it again includes the cost of construction and maintenance of the improvements placed on the land.
The trial judge granted summary judgment dismissing plaintiffs' complaint finding that it was barred by the statute of limitations because plaintiffs knew or should have known that they sustained actual damage in 1979 and therefore the six year period for the filing of such claims began at that time. The trial court concluded that plaintiffs suffered actual damage in 1979 when the rent redetermination caused a diminution in profits on plaintiffs' sublease with Downs.
Plaintiffs assert on this appeal that the trial judge erred in concluding "as a matter of law, that plaintiffs knew or should have known that they sustained actual damages in 1979" because even though the ground lease rents to Evergreen were "increased substantially" in 1979, the rents still remained substantially below the rental income received by plaintiffs from the Downs' sublease. Plaintiffs claim that actual damages did not occur until 1989 when the rent payable to Evergreen exceeded the rental income received from the Downs' sublease.
Plaintiffs' position, as set forth in the certification of plaintiff, Barrie B. Ellison, is that during the Downs sublease negotiations they "utilized the services of Richard Steffen, defendant's in-house accountant to assist [them] in evaluating the financial aspects of the transaction." Steffen raised the issue of the lack of a rent escalation clause in the sublease. In response to Steffen's query, defendant, through its partner, John E. Lee, Jr., told them not to worry about the absence of a rent escalation clause in the sublease *175 because defendant represented both plaintiffs and Evergreen and would see to it that Evergreen did not "hurt" plaintiffs because of the absence of an escalation clause in the sublease. Plaintiffs took that representation by defendant to mean that defendant would insure that plaintiffs never paid more in rent to Evergreen than it received in rent from Downs. Accordingly, it is plaintiffs' position that actual damage did not occur until 1989, when they were then required to pay more in rent to Evergreen than they received from Downs.
Defendant disputes this assertion by plaintiffs and maintains that actual damage occurred in 1979 when plaintiffs' profits were diminished. If plaintiffs are correct, then the statute of limitations did not begin to run until 1989, and therefore their malpractice claims against defendant would not be barred by the statute of limitations, although defendant's defense under the entire controversy doctrine would not be affected.
Legally-cognizable damages occur when a plaintiff detrimentally relies on the negligent advice of an attorney. Actual damages are those that are real and substantial as opposed to speculative ... "It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises." Therefore, although an adverse judgment may increase a plaintiff's damages, it does not constitute an indispensable element to the accrual of a cause of action.
[Grunwald v. Bronkesh, 131 N.J. 483, 495-96, 621 A.2d 459 (1993) (citations omitted).]
We are satisfied that the question of when actual damage occurred is a genuine issue of material fact and therefore summary judgment was improvidently granted. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954). Trial courts should "not [] conclude[] that palpably no genuine issue as to any material fact exists solely because the evidence opposing the claimed fact strikes the judge as being incredible." Id. at 75, 110 A.2d 24.
In light of our holding that summary judgment should not have been granted, we do not address the other points raised by plaintiffs on the issue of the statute of limitations.
*176 Having concluded that the trial judge mistakenly granted summary judgment based on the statute of limitations does not end our inquiry. Defendant further contends that plaintiffs' claims are barred by the entire controversy doctrine, R. 4:30A, as interpreted by the Supreme Court in Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989). Prior to Cogdell, "the entire controversy doctrine had applied only to bar later litigation of claims between those already parties to an action." Pressler, Current N.J. Court Rules, comment 1 on R. 4:30A (1995). "In Cogdell, the Supreme Court, for the first time, determined that the entire controversy doctrine encompassed the mandatory joinder of parties as well as claims." Circle Chevrolet Co. v. G H & C, 274 N.J. Super. 405, 412, 644 A.2d 626 (App.Div. 1994) (citation omitted)[2]; See also Cogdell, supra, 116 N.J. at 26, 560 A.2d 1169.
We are satisfied that defendant law firm should have been joined as a party defendant in Ellison v. Evergreen, supra. Our analysis of this issue begins with R. 4:28-1(a), which is the party joinder rule. It provides in part as follows:
A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.
[Ibid.]
Perhaps one could argue as plaintiffs here do, that plaintiffs and Evergreen "in the prior action could have secured complete relief between themselves without the current defendant []." Cogdell, supra, 116 N.J. at 13-14, 560 A.2d 1169. However, we disagree with that assertion. The prior case "presented a controversy which could not by any stretch of the imagination be *177 resolved completely as to all concerned simply by" a declaratory judgment action to declare that Evergreen did not have statutory authority to enter into the leases. Vacca v. Stika, 21 N.J. 471, 475, 122 A.2d 619 (1956). Plaintiffs sought a judgment determining that the 1964 and 1965 leases were void and unenforceable and discharging them from further obligations under the leases. In addition, plaintiffs sought the return of all rent money paid under the leases along with reimbursement of all costs and expenses for the improvements built on the lands. Furthermore, plaintiffs requested indemnification from Evergreen against any damages owed to subtenants because of Evergreen's purported lack of authority to lease the lands. Plaintiffs also sought counsel fees and costs and reformation of the ground leases to limit the rents paid thereunder to the amount required for cemetery purposes since Evergreen was a nonprofit corporation.
We are satisfied that complete relief could not have been accomplished without reference to the actions of defendant law firm. Plaintiffs alleged in their complaint in the prior action that they relied on defendant's advice that there was no legal impediment to Evergreen to lease the land and in reliance thereon executed the leases and developed the property at substantial expense. Further, plaintiffs asserted that they believed defendant's joint representation of both parties to the ground lease transactions and the fact that one of defendant's partners served as a member of Evergreen's board of trustees, may have contributed to their lack of knowledge concerning Evergreen's lack of legal capacity to consummate the ground leases. Had plaintiffs prevailed in the prior suit, "[t]he granting of [] relief ... [would] merely [be] the trigger which, in modern language, would start the chain reaction of other litigation to resolve the balance of the issues raised by the entire controversy." Vacca, supra, 21 N.J. at 475, 122 A.2d 619. Because plaintiffs did not prevail in the prior action does not afford them the proverbial "second bite at the apple" based on the same set of facts.
In addition, a disposition in the prior action in favor of plaintiffs without defendant law firm, could have "impair[ed] or imped[ed]" *178 its "ability to protect" itself from substantial damages. R. 4:28-1(a). Furthermore, a resolution of the prior action in favor of plaintiffs without defendant, could have subjected Evergreen "to a substantial risk of incurring double, multiple, or other inconsistent obligations." Ibid. In other words, Evergreen could have been subjected to damages that were legally the responsibility of defendant law firm.
At the time of the filing of the prior action, plaintiffs knew that in addition to representing both plaintiffs and Evergreen, one of defendant's partners was serving as a member of Evergreen's board of trustees during the ground lease and sublease negotiations and executions. Plaintiffs assert in their brief filed in this appeal that defendant "was actually not only a legal advisor, it was a principal in connection with the transaction." This comes close to the truth if plaintiffs' allegations are true. Plaintiffs' position that defendant is akin to a principal is bolstered by their assertion that defendant told them not to worry about a rent escalation clause in the Downs sublease because Evergreen would not "hurt" them. In light of the fact that plaintiffs' claim defendant was a principal in the original transactions it strains credulity to argue that defendant was not an "indispensable party" in the prior suit within the meaning of R. 4:28-1(a). "[A] party is [] indispensable [when] he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest." Allen B. Du Mont Lab. Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298, 152 A.2d 841 (1959).
Having concluded that the defendant was an indispensable party defendant in the prior suit we are satisfied that plaintiffs' claims for legal malpractice should have been asserted therein. R. 4:30A provides in pertinent part: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine[.]" Ibid.
The entire controversy doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all *179 parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy. [Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169.]
There is no question in our minds that this present action is part and parcel of the same controversy as Ellison v. Evergreen, supra. The allegations are the same. That is, plaintiffs assert that defendant law firm did not advise them that Evergreen did not have the legal authority to enter into the leases. As a result of that advice, plaintiffs relied to their detriment. Moreover, plaintiffs assert that defendant's failure to provide an escalation clause in the Downs sublease thereby caused plaintiffs to now pay more rent on the ground lease than income they receive from the sublease. The failure to have a rent escalation clause in the sublease is the real problem for plaintiffs and is the cause for the filing of this litigation and the prior suit against Evergreen.
To demonstrate further how these two cases are the same, we note that the same witnesses would have to be called to establish plaintiffs' claims, whether in the prior declaratory judgment action or this malpractice suit. In addition, we are satisfied that the damages sought by plaintiffs in this malpractice action are virtually the same as those sought in the prior matter. We are further satisfied that if ever there was a case where the entire controversy doctrine should "result in the preclusion of the omitted claims," this is it. R. 4:30A. "The purposes of the doctrine include the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to parties, and the need for complete and final disposition through the avoidance of `piecemeal decisions.'" Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169 (quoting State of New Jersey Constitutional Convention of 1947, Committee on the Judiciary Report § II(J) at 1187 (1947)).
We recognize that there are limits in applying the entire controversy doctrine to require the joinder of all parties and claims and to extend the doctrine in "certain circumstances might pose problems[.]" Cogdell, supra, 116 N.J. at 27, 560 A.2d 1169. The limits of the mandatory joinder rule
are reached when the joinder would result in significant unfairness or jeopardy to a clear presentation of the issue and just result. Implicit in the development of the *180 entire controversy doctrine is the recognition that economies and the efficient administration of justice should not be achieved at the expense of these paramount concerns. The entire controversy doctrine does not demand monolithic adjudications. Any possible unfairness to litigants, confusion in the presentation of issues, administrative unmanageability, or distortion in the truth  determining process that may result from compulsory joinder of parties  or claims  can be eliminated or at least minimized by a trial court possessed of the discretion to excuse joinder or to order severance.
[Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 354-55, 476 A.2d 250 (1984), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991).]
We are satisfied however, that the limits are not reached here. Plaintiffs' legal malpractice claims are precluded by the entire controversy doctrine. Although the trial judge precluded plaintiffs' claims because of the statute of limitations, "an order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it." Ellison v. Evergreen, supra, 266 N.J. Super. at 78, 628 A.2d 793; Isko v. Planning Bd. of Twp. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968).
Affirmed.
NOTES
[1] Inasmuch as many of the issues raised by this appeal were related to Ellison v. Evergreen, supra, we called for and examined the record on appeal in that matter.
[2] This matter is presently on appeal before the Supreme Court. The appeal was filed on March 29, 1994 and dismissed on June 21, 1994 for lack of prosecution. The appeal was reinstated on January 11, 1995.