243 N.J. Super. 624 (1990)
581 A.2d 109
RENO AUTO SALES, INC., PLAINTIFF-APPELLANT,
v.
PROSPECT PARK SAVINGS & LOAN ASSOC., A SAVINGS & LOAN ASSOC. OF THE STATE OF N.J., RICHARD FOX AND DETLEF VORMSCHLAG, DEFENDANTS-RESPONDENTS, AND C.W.I. CAR WHOLESALERS, INC. AND WILLIAM BLIWISE, DEFENDANTS. BERGEN AUTO IMPORT/EXPORT, INC., PLAINTIFF-APPELLANT,
v.
PROSPECT PARK SAVINGS & LOAN ASSOC., A SAVINGS & LOAN ASSOC. OF THE STATE OF NEW JERSEY AND RICHARD FOX, DEFENDANTS-RESPONDENTS, AND C.W.I. CAR WHOLESALERS, INC., AND WILLIAM BLIWISE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 11, 1990.
Decided October 9, 1990.
*625 Before Judges ANTELL, O'BRIEN and KEEFE.
Schepisi & McLaughlin, attorneys for appellants (Kenneth C. McBroom, on the brief).
Stern, Steiger, Croland, Tanenbaum & Schielke, attorneys for respondent, Prospect Park Savings & Loan Association (Jay Rubenstein and Mindy Michaels Roth, on the brief).
Cole, Yamner & Bray, attorneys for respondent, Detlef Vormschlag (Peter R. Bray, on the brief).
Respondent Richard Fox did not file a brief.
The opinion of the court was delivered by KEEFE, J.A.D.
*626 The issue presented on this appeal requires that we interpret the Supreme Court's direction in Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989), that the mandatory party-joinder rule announced in that case be applied "prospectively and to all cases not already on appeal." Id. at 28, 560 A.2d 1169.
Plaintiffs in these consolidated actions, Reno Auto Sales, Inc. (Reno) and Bergen Auto Import/Export, Inc., (Bergen), appeal from the entry of summary judgment in favor of defendants Prospect Park Savings & Loan Assoc. of the State of N.J. (Prospect), Richard Fox, and Detlef Vormschlag.[1] The Law Division judge, applying the Cogdell decision, reasoned that plaintiffs should have joined the movant/defendants as parties in prior litigation stemming from the same transactions and concluded that the current law suits were barred by the entire controversy doctrine. For the reasons stated herein we disagree with that conclusion and reverse the judgment under review.
The litigation under discussion arises out of a simple transaction involving the sale of two automobiles. Plaintiff Bergen owned a 1981 Saab and plaintiff Reno owned a 1983 Mercedes Benz. Each of these automobiles was sold to C.W.I. Car Wholesalers, Inc. (C.W.I.) on January 17, 1985. In each instance, C.W.I. made payment for the vehicle by check drawn on its account with defendant Prospect. Each check was dishonored by Prospect with the notation "Account Closed" (Bergen) or "Endorsement Cancelled" (Reno). C.W.I. apparently sold and delivered the Saab to Ramsey Auto Imports and sold and delivered the Mercedes to Lease-A-Car Corp.
*627 On June 13, 1985 Lease-A-Car Corporation, of which defendant Detlef Vormschlag is apparently a principal, instituted a suit against Reno and Clifford W. Snedecker, Director of the Division of Motor Vehicles alleging that it purchased the Mercedes from C.W.I. for $29,700 but that C.W.I. had failed to deliver the title to it. The complaint further alleged that title to the vehicle was being held by defendant Reno and that "[u]pon information and belief Reno Auto Sales gave or sold the vehicle to C.W.I. with the understanding that it was or might be sold." Lease-A-Car Corporation sought a declaratory judgment that it was the owner of the vehicle rather than Reno. Reno filed an answer and counterclaim in which it sought conversion damages in the amount of $31,200 against Lease-A-Car Corporation, or, in the alternative, a replevin of the automobile.[2] That matter proceeded to trial and resulted in a judgment in favor of Reno on April 10, 1986 directing Lease-A-Car Corporation to deliver possession of the Mercedes to Reno. Neither Prospect, Fox, C.W.I., Bliwise nor Vormschlag were made parties to that litigation.
On July 9, 1985 Bergen instituted suit against C.W.I., Bliwise as principal of C.W.I., Ramsey Auto Imports and Ray Van Doren, a principal of Ramsey, seeking a return of the Saab automobile or conversion damages in the amount of $6,780. Bergen also sought damages for the "wrongful detention of said equipment."[3] That litigation terminated in a final judgment dated November 1, 1985 in favor of Bergen and against defendants Ramsey Auto Parts and Ray Van Doren for possession of the vehicle together with the payment of certain money from an escrow account being held by attorneys involved in the *628 litigation. Neither Prospect, Fox nor Vormschlag were parties to that litigation.
On February 2, 1987 Reno instituted a suit against Lease-A-Car Corporation seeking money damages for damage done to the Mercedes while it was in the possession of Lease-A-Car prior to its return to Reno. That action was dismissed on motion for summary judgment on November 4, 1987 on the grounds that it was barred by the entire controversy doctrine. (Mandatory joinder of claims.) That judgment is not challenged on appeal.
On February 24, 1987 Reno and Bergen filed separate complaints against defendants Prospect, Fox, C.W.I., Bliwise and Vormschlag. Each of the complaints was substantially identical to the other except that in the Reno complaint the focal point was the Mercedes transaction while in the Bergen complaint it was the Saab transaction. Each of the complaints alleged, among other things, that defendant Fox, as Prospect's agent, and defendants Bliwise and Vormschlag acted in concert to create a false impression that C.W.I. was a solvent corporation when it was not and that Fox and Vormschlag received illegal kickbacks in exchange for uncollateralized loans issued to Bliwise by Prospect. The plaintiffs in each case alleged that they suffered money damages by reason of the defendants' fraud and conspiracy. The complaints were subsequently consolidated for trial.[4]
In April, 1988 defendant Prospect filed a motion to dismiss the consolidated complaints based upon the entire controversy doctrine. The motion was denied. On July 24, 1989 the Supreme Court decided Cogdell v. Hospital Center at Orange, supra. In that case Justice Handler, writing for the majority, said:

*629 We thus conclude that the entire controversy doctrine appropriately encompasses the mandatory joinder of parties. Accordingly, we now hold that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy. [116 N.J. at 26, 560 A.2d 1169.]
Thereafter, defendant Prospect renewed its motion for summary judgment. The motion was joined by defendant Fox. As stated earlier, the motion resulted in a judgment in favor of all defendants.
At the nub of this appeal is an interpretation of the Supreme Court's statement in Cogdell that the mandatory party-joinder rule announced by the Court on that day "be applied prospectively and to all cases not already on appeal." Id. at 28, 560 A.2d 1169. The trial judge interpreted those words so as to apply the rule, and consequently the bar of the entire controversy doctrine, to all litigation pending at the time Cogdell was decided, except those cases on appeal, regardless of whether it was the claimant's first law suit arising out of the transaction or occurrence between the parties (first level litigation),[5] or the claimant's second law suit arising out of the same transaction or occurrence but against different parties (second level litigation).[6]
We disagree with that conclusion because such an interpretation when applied to second level litigation, as in this case, in reality results in the retroactive application of the mandatory party-joinder rule by effectively barring the second litigation without having given the plaintiff an opportunity to observe the new rule announced in Cogdell by joining all known parties as well as all known claims in the first litigation. Had the Supreme Court intended the result arrived at in this case by the Law Division judge, it would have applied the rule to plaintiff Cogdell who, after all, was also involved in second level litigation *630 at the time her appeal was decided, especially since the Court found that Cogdell "had sufficient information to have included these defendants in the earlier law suit." Id. at 25, 560 A.2d 1169. Instead, Justice Handler wrote:
Understandably, plaintiff could have interpreted Crispin [v. Volkswagenwerk A.G., 96 N.J. 336, 476 A.2d 250 (1984)] to have preserved the option of joining these defendants in the previous law suit or suing them in a separate action, an option that was not foreclosed by the specific or literal terms of the existing rules of practice. [citations omitted.] Because our decision invokes our rule-making, as well as our adjudicatory authority, fairness to plaintiff and others similarly situated impels us to follow the rule of prospectivity normally applied to legislative pronouncements. [116 N.J. at 28, 560 A.2d 1169.]
Needless to say, plaintiffs Reno and Bergen in this litigation are "similarly situated" to the plaintiff in Cogdell because these plaintiffs are also involved in second level litigation arising out of the same transaction or occurrence which generated the first level litigation. Thus, we conclude from the foregoing language that the Supreme Court intended the new mandatory party-joinder rule to apply only where the first level litigation was pending and not on appeal at the time Cogdell was decided. Such interpretation fulfills the Court's intention to apply the rule prospectively by affording claimant's in that class the opportunity, post Cogdell, to amend their pleadings to conform with the mandate of the rule.
We believe our interpretation is further buttressed by the Court's unwillingness to apply the rule to cases on appeal at the time of its decision. It appears to us that the reason for exempting such cases from the application of the rule was a recognition by the Court that the claimants in such cases could not move to amend their pleadings while their cases were on appeal. On the other hand, the application of the Cogdell rule to second level cases pending at the time of the decision, but not to second level litigation cases on appeal, makes no practical sense.
Lastly, we are reminded by the Cogdell Court that the polestar for the application of the rule is judicial "fairness". 116 N.J. at 28, 560 A.2d 1169. Nothing would be more unfair in *631 our opinion than to apply the mandatory party-joinder rule to second level litigants such as the plaintiffs in these consolidated cases who did not have the benefit of the newly announced party-joinder rule during their first litigation when they could have complied with the rule by amending their complaint.
Reversed and remanded.
NOTES
[1] Defendant William Bliwise was served with the summons and complaint in both cases but did not answer. Default was entered against him. The status of the claim against defendant C.W.I. is not clear from the record. However, the parties are treating the summary judgment order entered in these consolidated matters on October 2, 1988 as a final judgment and we shall do likewise.
[2] This lawsuit will be described later in this opinion as "first level litigation," meaning the first lawsuit arising out of a common occurence or transaction.
[3] This litigation will also be described later in this opinion as "first level litigation."
[4] These lawsuits will be described later in this opinion as "second level litigation," meaning the second lawsuit brought involving the same transaction or occurrence as the first lawsuit.
[5] See footnote 2 & 3.
[6] See footnote 4.