281 N.J. Super. 180 (1995)
656 A.2d 1292
MILKAP CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
INDUSTRIAL CONSTRUCTION COMPANY, INC., A PENNSYLVANIA CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 1995.
Decided April 24, 1995.
*181 Before Judges SKILLMAN, WALLACE and KLEINER.
Gravino & Vittese, attorneys for appellant (Mark A. Vittese, of counsel and on the brief).
Markowitz and Zindler, attorneys for respondent (Howard A. Teichman, of counsel and on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Prior to 1989, plaintiff Milkap Corporation was engaged in the business of real estate development. It intended to develop raw acreage in Montgomery Township into an approved major subdivision to be known as "Hidden Estates" encompassing twenty-six separate building lots to be sold for residential home construction.
On February 9, 1989, plaintiff entered into a contract with R & S Colonial Builders, Inc. (Colonial) and its principal Richard Grosso (Grosso) as guarantor, to sell the entire completed subdivision *182 at $125,000 per lot. On July 18, 1989, plaintiff entered into a contract with defendant Industrial Construction Company, Inc. (Industrial) to install a roadway within the residential subdivision.
On May 25, 1990, plaintiff filed a complaint against Colonial and Grosso. Plaintiff alleged that Colonial and Grosso breached their contract to purchase the entire subdivision by failing to close title and to post performance bonds which were required prior to the completion of the subdivision. The complaint sought specific performance or, in the alternative, monetary damages. Colonial and Grosso filed an answer alleging as a specific separate defense that the roadway within the subdivision was substandard and defective. The litigation between plaintiff and Colonial and Grosso settled.[1]
On August 13, 1993, plaintiff filed its complaint against Industrial. In count one, plaintiff alleged that defendant breached its contract by its use of inadequate materials in constructing the subdivision roadway and alleged improper installation of the roadway. Plaintiff additionally alleged that defendant refused plaintiff's demands to repair the defects in the roadway. In count two, plaintiff repeated its allegations but premised its allegations on a negligence theory. Plaintiff's complaint made specific reference to the alleged breach of contract by Colonial and Grosso, to the litigation instituted by it against Colonial and Grosso, and to the settlement of that litigation.
Defendant filed an answer to plaintiff's complaint. Thereafter, by an amended answer filed with leave of court, it specifically alleged an "entire controversy" defense. Defendant subsequently moved for summary judgment predicated upon its "entire controversy" defense. Plaintiff, in its response to defendant's motion, *183 contended that the court rules in effect when plaintiff filed suit mandated only that all claims against entities already a party to the litigation be joined, and the court rules did not require the addition of other parties to avoid preclusion of a second lawsuit. Plaintiff's defense to the motion relied upon Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989), later codified in R. 4:30A. Plaintiff contended that Cogdell was not in effect during the pendency of the litigation with Colonial and Grosso, as R. 4:30A had not yet been adopted, and therefore plaintiff was not barred in bringing its later suit against defendant. The motion judge disagreed and concluded:
Rule 4:30A is merely a codification of the rule set forth in Cogd[ell] regarding mandatory joinder of parties as well as claims. Cog[dell] was decided in 1989, before the filing of the complaint in the first action.
Furthermore, the [c]ourt agrees with the defendant that there can be no question that the plaintiff . .. was aware of the potential alleged culpability of Industrial Corporation during the first lawsuit and that the policies underlying the entire controversy doctrine preclude this litigation.
The court granted summary judgment to defendant and dismissed plaintiff's complaint with prejudice. Plaintiff appeals. We affirm.
Prior to September 4, 1990, the only reference in the court rules to the entire controversy doctrine was contained in R. 4:27-1(b), governing joinder of claims, which provided that "[e]ach party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine." Ibid. In contrast, prior to September 1990, the rule governing joinder of parties did not reference the entire controversy doctrine. R. 4:28-1. In Cogdell, supra, 116 N.J. at 26, 560 A.2d 1169, the Supreme Court held "that the entire controversy doctrine appropriately encompasses the mandatory joinder of parties." Ibid. The Court concluded "that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy." Ibid.
*184 The Court mandated the amendment of the then current party joinder rule to reflect the applicability of the entire controversy doctrine to the failure to join parties with a material interest in the litigation. Ibid. The Court also instructed that the amendment would be prospectively applied "to all cases not already on appeal." Id. at 28, 560 A.2d 1169.
In response to Cogdell, R. 4:30A, applicable to both parties and claims, was adopted ... replacing R. 4:27-1(b), which was applicable only to claims among those already parties. R. 4:30A does not, however, undertake to define, limit or qualify the doctrine. That is best left to case law development.
Pressler, Current N.J. Court Rules, comment 1 on R. 4:28-1 (1995).
However, R. 4:30A does "constitute a caution to the bar to be aware of potential claim preclusion against non-parties as well as parties." Id., comment 1 on R. 4:30A. R. 4:30A, effective September 4, 1990, provides in pertinent part: "[n]on-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." Ibid. In addition, the rule governing the joinder of parties is "subject to the provisions of R. 4:30A...." R. 4:28-1(e).
Cogdell was decided on July 24, 1989. Plaintiff filed its complaint against Colonial and Grosso on May 25, 1990. R. 4:30A was adopted effective September 4, 1990. Based on that time sequence, plaintiff contends it is not precluded from suing defendant, as its complaint against Colonial and Grosso predated the implementation of Cogdell by the enactment of R. 4:30A.
Although the prospective effect of Cogdell on then pending litigation has been analyzed in Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n., 243 N.J. Super. 624, 581 A.2d 109 (App.Div. 1990), and thereafter in Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 274 N.J. Super. 405, 644 A.2d 626 (App.Div. 1994), neither case focused upon the question posed by plaintiff in this appeal: Does the decision in Cogdell apply to complaints filed after the decision but prior to the effective date of R. 4:30A? We conclude that it does.
*185 This court explicitly held that the mandatory party-joinder rule announced in Cogdell applied to all first level litigation pending, but not on appeal, when Cogdell was decided. Reno Auto Sales, Inc., supra, 243 N.J. Super. at 630-31, 581 A.2d 109. "First level litigation" means the initial lawsuit arising out of the same transaction or occurrence that formed the basis for the second lawsuit, or "second level litigation," to which the entire controversy doctrine may or may not apply. Id. at 629, 581 A.2d 109. If the second level litigation, but not the first level litigation, was pending in trial court at the time Cogdell was decided, then the rule announced in Cogdell could not bar the second suit. Id. at 630-31, 581 A.2d 109. Therefore, the entire controversy doctrine in relation to the joinder of parties bars second level litigation, even if the initial litigation was instituted prior to September 4, 1990, which was when R. 4:30A became effective, so long as the initial case was pending in the trial court on July 24, 1989, when the Supreme Court decided Cogdell.
Here, the first level litigation was instituted after Cogdell. Plaintiff is charged with complying with the mandates of the Supreme Court. Plaintiff's obligation to follow Cogdell did not require the promulgation or adoption of R. 4:30A, and plaintiff may not escape the effect of Cogdell by arguing that its complaint was filed prior to the adoption of R. 4:30A.
On appeal, plaintiff argues that the motion judge improperly dismissed its complaint because defendant did not have a material interest in the previous suit, which arose out of a separate contractual relationship than the current litigation.
"The purposes of the [entire controversy] doctrine include the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to parties, and the need for complete and final disposition through the avoidance of `piecemeal decisions.'" Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169 (citation omitted). The Supreme Court mandated the joinder of all parties with a "material interest" in the pending litigation. Id. at 26, 560 A.2d 1169. However, "the [entire controversy] doctrine does not *186 bar related claims that were unknown, or had not arisen or accrued at the time of the original action." Fisher v. Yates, 270 N.J. Super. 458, 469-70, 637 A.2d 546 (App.Div. 1994). In determining whether an action should be barred, we have recently concluded that "a particularized evaluation is required to determine whether the policies sought to be fostered by the doctrine require its application as a preclusive principle when balanced against a litigant's right to tailor separate causes of action...." DiTrolio v. Antiles, 276 N.J. Super. 234, 247, 647 A.2d 1318 (App.Div. 1994).[2] An example of "particularized evaluation" is our recent analysis in Ellison v. Schenck, Price, Smith and King, 280 N.J. Super. 169, 654 A.2d 1024 (App.Div. 1995) (holding that the entire controversy doctrine barred a legal malpractice suit when plaintiffs previously filed a declaratory judgment action against their landlord alleging that the leases were nullities and that they were previously unaware that the landlord could not legally enter into such leases because their counsel, who also served as the landlord's counsel, failed to inform them that the landlord was legally precluded from entering into those leases).
In the instant matter, both the present suit against defendant and the prior suit against Colonial and Grosso involve the same controversy. Colonial and Grosso defended plaintiff's breach of contract action on the basis of defective roadway construction. Plaintiff's claim against defendant seeks damages attributable to that same faulty roadway construction. In fact plaintiff's complaint specifically alleged the following:
12. On February 9, 1989, the plaintiff signed an agreement to sell a 26 unit subdivision for a sale of $125,000.00 per lot to Richard Grosso.
13. On or about May 25, 1990, Richard Grosso, the purchaser, failed to close on the sales contract stating that the installation of the roads were substandard and the Plaintiff breached the contract. The plaintiff and Richard Grosso, the purchaser, entered into litigation.

*187 14. During the course of the litigation between Richard Grosso and Milkap Corporation, tests were performed indicating that the installation of the roads were substandard.
15. The roadway failed to meet the requirements of the Agreement between Milkap Corporation and Industrial Construction Company, Inc. as well as the requirements of Montgomery Township.
16. Milkap Corporation was forced to reduce the price on the lots from $125,000.00 per lot to $100,000.00 per lot plus pay the cost to repair the roads that the defendant, Industrial Construction Company, Inc., installed throughout the parcel.
17. As a result of the work performed by the defendant, the Plaintiff was forced to lower its sale price on the 26 unit subdivision from $125,000.00 to $100,000.00 per lot.
18. The Plaintiff was forced to put an additional $127,000.00 into an escrow account for repairs of the existing damage to the roads caused by the defendant's poor installation of the roadway.
Our dissenting colleague stresses that the record presented to the motion judge "does not indicate when the tests of the roads were performed, how far the original litigation progressed before the settlement was entered into, or the circumstances of the settlement," thus warranting a reversal of the motion decision and a remand to the motion judge for development of a more extensive record. We disagree.
Plaintiff had, in our opinion, the obligation to seek leave to join Industrial in the initial litigation as a party defendant as soon as it learned that Colonial and Grosso's defense was predicated upon allegations of defective road construction attributable to Industrial. It learned of that defense when Colonial and Grosso filed their answer. If insufficient facts were then known, certainly, plaintiff's obligation to seek leave to join Industrial became paramount when test results were obtained, which we infer were sufficiently corroborative of Colonial and Grosso's allegations to have instigated or influenced the negotiation of a settlement to the detriment of plaintiff. If there are equitable considerations which prompted plaintiff to negotiate a settlement with Colonial and Grosso without the delay that would have been occasioned by the filing of a motion to join a new party defendant, those equitable factors which might have exonerated plaintiff from complying with Cogdell, should have been brought to the attention of the motion judge *188 in response to defendant's motion to dismiss. The failure of plaintiff to respond to defendant's motion should not now result in a remand for the development of a more extensive record. That record should have been developed by plaintiff when the motion was first argued.
"The second lawsuit, though technically separate and independent, is in truth not much more than a re-run of the earlier lawsuit." Cogdell, supra, 116 N.J. at 26, 560 A.2d 1169. Although defendant, if liable, would not be bound to pay plaintiff the exact sum claimed by plaintiff and predicated on its settlement with Colonial and Grosso, nonetheless, had defendant been joined as a party in the original litigation, the reduction in lot price may have been less. It is also clear that plaintiff's claim against defendant, if tried, will involve the same witnesses who would have been called as witnesses in the initial litigation, including employees of Colonial and Grosso.
The decision of the motion judge which precluded this litigation was correct. The order for summary judgment is affirmed.
SKILLMAN, J.A.D., dissenting.
I agree with the majority's conclusion that the party joinder requirement of the entire controversy doctrine imposed by Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989) applies to complaints filed after the decision in Cogdell but prior to the effective date of Rule 4:30A. I also agree with the majority's conclusion that defendant had a "material interest" in plaintiff's controversy with Colonial and Gross which under Cogdell required his joinder in plaintiff's first action.
However, it does not automatically follow that plaintiff's present complaint should be dismissed. A court should not invoke dismissal as a sanction for a party's failure to comply with the party joinder requirement of the entire controversy doctrine if that remedy will result in "significant unfairness." Id. at 27, 560 A.2d 1169 (quoting Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 354, 476 A.2d 250 (1984)). For the reasons expressed in my concurring *189 opinion in DiTrolio v. Antiles, 276 N.J. Super. 234, 253-55, 647 A.2d 1318 (App.Div. 1994), I believe that a court should proceed with particular caution in applying the entire controversy doctrine to bar subsequent litigation when a prior action has been settled before trial.
The record contains limited information regarding plaintiff's original lawsuit. It only indicates that plaintiff's original complaint was filed on May 25, 1990, that an answer which alleged as a separate defense that the roads defendant constructed were substandard was filed sometime thereafter, that tests which supported this allegation were subsequently performed, and that the litigation was settled by plaintiff agreeing to reduce the sales price of its lots from $125,000 to $100,000 per lot and to escrow an additional $127,000 for road repairs. The record does not indicate when the tests of the roads were performed, how far the original litigation progressed before the settlement was entered into, or the circumstances of the settlement.
I appreciate that plaintiff presumably could have presented this information in opposition to defendant's motion to dismiss but that it instead relied exclusively upon a legal argument that the party joinder requirement of the entire controversy doctrine was inapplicable because Rule 4:30A had not yet been adopted when the original action was filed. However, there is substantial uncertainty and controversy among both the trial bar and lower court judges regarding the scope of the party joinder requirement of the entire controversy doctrine. See, e.g., 1994 Report of Civil Practice Committee 136 N.J.L.J. 581, 589 (Feb. 14, 1994) and the majority, concurring and dissenting opinions in DiTrolio v. Antiles, supra. Therefore, I am reluctant to sustain the dismissal of a complaint simply because a plaintiff failed to realize the significance of evidence relevant to a still uncertain and evolving procedural requirement, especially in the absence of a compelling showing of prejudice by defendant. Accordingly, I would reverse the dismissal of plaintiff's complaint and remand for the development *190 of a more complete record regarding defendant's entire controversy defense.
NOTES
[1] The settlement agreement between plaintiff and Colonial and Grosso has not been made a part of the record on appeal. We are able to discern from other pleadings that among the terms of the settlement, plaintiff agreed to accept a $25,000 reduced purchase price on each of the twenty-six lots. Additionally, plaintiff was required to escrow $127,000 for repairs to the roadway attributable to its defective installation. Plaintiff's alleged loss was $777,000.
[2] This decision is presently pending argument in the Supreme Court based on a dissent filed in this court. Id. at 255, 647 A.2d 1318 (Michels, P.J.A.D., dissenting).