**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0887-16T2

MEAGAN J. DE PAUL,

    Plaintiff-Appellant,

v.

THE ESTATE OF CATHERINE
DE PAUL, the Representative of
the Estate is KAREN L. ARCHETTO
as Executrix, and ANTHONY J. DE
PAUL, a/k/a ANTHONY J. DE PAUL
(POA Trustee),

    Defendants-Respondents.

_____

Submitted April 1, 2019 – Decided April 25, 2019

Before Judges Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1469-16.

Meagan J. DePaul, appellant pro se.

Anthony J. DePaul, respondent pro se.

PER CURIAM

Plaintiff Meagan J. DePaul appeals from the Law Division's September 30, 2016 order granting summary judgment and dismissing her complaint with prejudice.[1]  The trial court found that plaintiff's complaint was barred by the entire controversy doctrine.  For the reasons that follow, we reverse and remand.

I.

The dispute in this appeal stems from the disposition of a residential property in Mays Landing ("the property").  The property was owned by Catherine DePaul prior to her death on December 28, 2011.  Defendant Anthony J. DePaul is the son of Catherine.  Plaintiff Meagan J. DePaul is Anthony's daughter.[2]  Defendant Karen Archetto is the daughter of Catherine and the executrix of Catherine's estate ("the Estate").  Non-party Cristy Santiago is Meagan's mother.

The Chancery Division, Probate Part previously adjudicated the disposition of this property.  Judge Raymond A. Batten held a two-day trial and issued a decision in March 2015.  Therefore, we also recount the facts and procedural history of the previous action.

---

[1]  This matter was scheduled for oral argument on April 1, 2019, but none of the parties attended oral argument.

[2]  Because some of the parties share the same last name, we refer to them by their first names only.  We intend no disrespect.

A-0887-16T2

A.

Pursuant to a last will and testament executed by Catherine on March 24, 1999, the property would pass to Catherine's trustee, to be held in trust for the benefit of Anthony, at the time of Catherine's death. The will appointed Karen Archetto as trustee of Anthony's trust. It also appointed Archetto as executor of the Estate.

Pursuant to the will, Anthony retained the right to occupy the property during his lifetime, provided that he paid all costs for the upkeep of the property, paid all real estate taxes and assessments, and maintained fire and casualty insurance. In addition, Anthony's right of occupancy would terminate if he failed to occupy the property for any consecutive 180-day period, or if he attempted to transfer, assign, or lease the property.

Upon Anthony's violation of any of these provisions, the trustee was authorized to sell the property. The proceeds of any such sale were to be added to the assets held in trust for Anthony.[3] The trustee would make payments of $500 per month to Anthony until the trust was exhausted, and the $500 payments

---

[3] Upon Anthony's death, the trustee would sell the property and distribute the assets as follows: (1) $15,000 to Catherine's granddaughter Catherine DePaul, (2) $15,000 to Catherine's granddaughter Marcella DePaul, (3) $5,000 to Cristy Santiago, and (4) $10,000 to Meagan DePaul.

were to be applied directly to any mortgage that remained outstanding on the property.

As alleged Meagan's instant complaint in the Law Division, in February of 2011, Catherine met with Meagan and offered to use funds from a trust fund, which had been established and funded by Catherine, Anthony, and Santiago for Meagan's benefit, to pay off the mortgage on the property. The agreement also entailed using the funds from Meagan's trust fund to finance the construction of an addition onto the property for Catherine to live in.[4] In return, Catherine would revise her will such that Meagan would become the trustee of Anthony's trust, and that Meagan would become the sole beneficiary of the property upon Anthony's death. Additionally, Meagan would collect rent from Anthony to be placed in trust for Meagan's education, health, and support, and Anthony would continue to pay all bills related to the property. Accordingly, in March 2011, Catherine met with an attorney to revise her will. In July 2011, Catherine wired

---

[4] The record is unclear as to exactly which funds were used to finance this construction. Meagan's complaint states that the total amount of the funds from her trust account was $104,109.82 and that all the funds were exhausted by paying off the mortgage, funding the construction, and by other withdrawals by Anthony. As discussed more fully below, Judge Batten concluded that Santiago had contributed $162,000 to the improvement of the property. The record is unclear as to whether it was addressed in the previous Chancery Division litigation that money from Meagan's trust fund was used to finance the construction.

A-0887-16T2

$38,380.04 from Meagan's trust account to Chase Bank to pay off the mortgage on the property.

On September 28, 2011, Catherine was hospitalized after falling and suffering an arterial puncture. Catherine was suffering from kidney failure and needed dialysis three times per week, and was also mentally deteriorating. Catherine had been residing with Archetto, but Archetto did not believe it was safe for Catherine to continue to reside with her given her health needs. Therefore, upon her discharge from the hospital on October 5, 2011, Catherine began living with Anthony at the Mays Landing property.

On October 20, 2011, Catherine again met with an attorney and executed a power of attorney appointing Anthony as her attorney-in-fact. Additionally, the attorney prepared a draft of a revised will, but this draft was never executed by Catherine. The draft will appointed Meagan as trustee of all trusts established pursuant to the will, except that Anthony would serve as temporary trustee if Meagan was not yet eighteen years old at the time of Catherine's death. It appointed Anthony as executor of the Estate. The draft will directed that the trustee (Meagan) would retain the property in trust, but permit Anthony to continue to reside there provided that he paid fair market rent and paid all

expenses related to the property. The trustee retained the discretion to sell the property if Anthony no longer wished to reside there.

Additionally, the draft will provided that the residuary was to be held in trust for the benefit of Anthony and Meagan.[5] The trustee (Meagan) retained the sole discretion to distribute funds from the trust as needed for the health, maintenance, and support of Anthony and Meagan. Moreover, upon the death of Anthony, the trustee (Meagan) was to pay over the balance of the trust fund to Meagan, including any real property held in trust. Accordingly, Meagan would receive the property in her name upon the death of Anthony.

Catherine, however, never executed this draft will. Catherine was hospitalized two more times in November and December of 2011. She passed away while at the hospital on December 28, 2011.

Eight days prior to Catherine's death, however, Anthony executed a quitclaim deed in his capacity as Catherine's attorney-in-fact, transferring the property from Catherine to himself for consideration of $1. Anthony avers that he attempted to place the property in trust for Meagan. Additionally, it appears that Anthony, as Catherine's attorney-in-fact, entered into a written agreement

---

[5] The draft will also specifically provided that Karen Archetto, Dean Archetto, Benjamin Archetto, Catherine DePaul and Marcella DePaul would have no right or interest in any part of the Estate.

with Santiago for her to contribute money to the improvement of the property in exchange for Anthony placing the property in trust for Meagan's benefit until she turned eighteen, at which time the property would be deeded to Meagan individually.[6]

## B.

A few weeks after Catherine death, Archetto probated Catherine's 1999 will and was appointed executrix. On January 10, 2014, Archetto filed a verified complaint in the Chancery Division, Probate Part, alleging that Anthony had impermissibly conveyed the property to himself and had also inappropriately retained funds from Catherine's accounts.

Meagan avers that Archetto never served her with the verified complaint even though Meagan was a named beneficiary of the 1999 will. According to Meagan, she contacted the Superior Court, and was advised to contact the Surrogate's Office. The Surrogate's Office advised Meagan to submit an affidavit to be considered by the judge, and Meagan submitted an affidavit stating that she had not been served even though she was a named beneficiary and would like to be a party to the litigation. According to Meagan, Judge Batten

---

[6] Neither this written agreement nor the quitclaim deed are contained in the record for the instant matter.

A-0887-16T2

acknowledged on the record on March 24, 2015 that this affidavit was not received in chambers.[7] Anthony also filed a motion to join Meagan as an indispensable party on March 9, 2015, but the motion was denied due to lateness.

After presiding over a two-day bench trial, Judge Batten rendered an oral decision on March 31, 2015. Initially, the judge found that Anthony's attempted conveyance of the property via quitclaim deed was invalid, because he was not authorized to convey the property to himself by the terms of the power of attorney. Therefore, the judge concluded that Meagan enjoyed no legal interest in the property because the transaction was "structurally flawed." Accordingly, the court voided the quitclaim deed and adjudicated the property to be an asset of the Estate that passed through the estate and into trust for the benefit of Anthony.

In so ruling, however, Judge Batten acknowledged that it appeared that it was Catherine's intent that the property pass to Meagan:

> And I am left somewhat unsettled by concluding [the] decision [to void the quitclaim deed] to be the most appropriate, most legally correct, because it is the Court's sense, which Mr. DePaul does not – with which he does not argue, that Catherine DePaul had achieved agreement with Cristy Santiago that in consideration for the contributions by Ms. Santiago . . . that [the

---

[7] The record in this appeal does not contain the transcripts from the March 24, 2015 proceeding before Judge Batten.

property] was to be placed in trust for Meagan until such times as she turned eighteen, whereupon the property would be deeded to her individually.

In this regard, Judge Batten noted that Santiago had filed a complaint asserting that she was entitled to adjudication of a constructive trust in the amount of $162,000, based on the written agreement entered into by Anthony as Catherine's attorney-in-fact. The judge found that it was undisputed that Santiago had contributed this sum to the improvement of the property. Accordingly, the court entered a judgment against the Estate in the sum of $162,000 plus judicial interest, which was to act as a lien against the property. In so ruling, the judge noted:

> That aspect of the Court's decision today certainly acknowledges and preserves Ms. Santiago's contributions to the improvements of [the property], and in so ruling the Court recognizes that interested parties – the estate, trusts for the trusts stablished in the last will of Catherine DePaul – may achieve a rather pragmatic solution yielding title ultimately in the name of Meagan DePaul; but I leave that to the interested parties, and any such pragmatic solution that yielded the net result would likely include, one would imaging, forgiveness of the judgment consistent with the agreement reached between Catherine DePaul and Cristy Santiago.

Judge Batten entered a final judgment memorializing his ruling on April 20, 2015. Anthony appealed Judge Batten's rulings, and Archetto cross-

9

appealed the judgment in favor of Santiago. Meagan filed a motion to intervene in the appeal, which we granted on November 17, 2015. After being granted intervenor status, Meagan filed motions in the appeal. In December 2015, Meagan filed a motion to vacate the previous judgment and dismiss Archetto's cross-appeal as late, moot, and invalid. We denied this motion. Additionally, in January 2016, Meagan filed a motion to dismiss Archetto as a dispensable party or in the alternative vacate the trial court's judgment for failure to serve and join a necessary/indispensable party. We also denied this motion.

As neither Anthony nor Archetto filed the appropriate transcripts to prosecute the appeal and cross-appeal, orders dismissing the appeal and cross-appeal were entered on March 1, 2016. Meagan notes that she was not at fault for this dismissal, as she was not required to file transcripts as an intervenor. Indeed, a motion filing notice provided to Meagan on October 27, 2015 specifically indicated that her motion to proceed as indigent and for transcripts at public expense was being returned and was not being filed because Meagan was seeking to intervene in an open appeal. The letter stated that Meagan was not required to pay a filing fee, and that the appellant was required to order and file the transcripts.

## C.

On July 5, 2016, Meagan filed a five-count complaint in the Law Division. Counts one and two sought money damages against the Estate for breach of contract and negligence. Count three was asserted against Anthony and the Estate for unjust enrichment and sought the imposition of a constructive trust on the property and compensatory damages. Count four sought money damages against the Estate for breach of fiduciary duty. Count five was asserted against Anthony and the Estate for fraud and sought the imposition of a constructive trust on the property.

Archetto, as executrix of the estate, filed a pro se motion for summary judgment, asserting that Meagan's complaint was barred by the entire controversy doctrine. Meagan opposed the motion. Although named as a defendant in Meagan's complaint, Anthony also joined in Meagan's opposition.

After hearing oral argument on September 30, 2016, the trial court issued a written decision granting summary judgment to Archetto and the Estate.[8] Accordingly, the trial court entered an order dismissing Meagan's complaint

---

[8] By this time, Judge Batten had retired from the bench, and the matter was handled by a different judge.

A-0887-16T2

with prejudice.  The trial court determined that Meagan's complaint was barred by the entire controversy doctrine, reasoning:

> The Court finds that each of [Meagan's claims] arise from the same controversy involving the Mays Landing real property that was previously decided by Judge Batten.  Specifically, all counts allege a claim for relief out [of] an allegedly failed agreement and plan to amend decedent's will to change the bequest of the Mays Landing property.  Plaintiff concedes both in her [c]omplaint and her [o]pposition to motion for [s]ummary judgment that, after reaching the age of majority, she was aware of the prior estate litigation before its final resolution. . . .  Further, despite the result of her efforts to intervene at the trial level, the Appellate Division granted [p]laintiff's motion to intervene, yet the case was ultimately not pursued at the appellate level.  Additionally, [p]laintiff's complaint acknowledges the timeline of appellate opportunities from November 17, 2015 through May 3, 2016. . . . Thus, the Court finds no genuine issues of material fact in dispute; [p]laintiff was previously aware of the prior litigation, the prior litigation decided the issues underlying the counts in [p]laintiff's complaint, and [p]laintiff was afforded the opportunity to prosecute the prior litigation at the appellate level.

This appeal followed.

## II.

We review a grant of summary judgment de novo, applying the same standard as the trial court.  <u>Henry v. N.J. Dep't of Human Servs.</u>, 204 N.J. 320, 330 (2010).  Summary judgment must be granted if "the pleadings, depositions,

12

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court considers whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, Meagan argues that the trial court improperly applied the entire controversy doctrine to bar her claims.[9] In his appellate brief, Anthony again joins Meagan in seeking reversal of the trial court's grant of summary judgment.[10] Having reviewed the record and applicable legal principles, we agree that the entire controversy doctrine does not bar Meagan's claims.

---

[9] Meagan's appellate brief presents additional arguments for reversal, but we need not address these arguments in light of our reversal of the trial court's determination on the entire controversy doctrine.

[10] Archetto has not filed an appellate brief on behalf of herself or the Estate.

The entire controversy doctrine stems from the "long-held preference that related claims and matters arising among related parties be adjudicated together rather than in separate, successive, fragmented, or piecemeal litigation." Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 443 (2011). "A series of court rules implement the entire controversy doctrine in our courts." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, ___ N.J. ___, ___ (2019) (slip. op. at 17). Relevant to the instant matter, Rule 4:30A addresses the mandatory joinder of claims:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

In general, the entire controversy doctrine requires that a party assert all claims arising from the same transactional facts in a single lawsuit, including defenses, counterclaims, and cross-claims. See Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322-23 (1995). In determining whether a successive suit arises from the same transaction of a previous suit, "it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder

14

to create a cohesive and complete litigation." Ibid.; see also DiTrolio v. Antiles, 142 N.J. 253, 271 (1995) ("The entire controversy doctrine does not require commonality of legal issues.").

The determination of whether to apply the entire controversy doctrine to bar a successive claim rests within the discretion of the trial court. Mystic Isle, 142 N.J. at 323. The Supreme Court recently reiterated that in exercising this discretion, courts must consider fairness and equitable principles:

> Because "the polestar for the application of the [entire controversy] rule is judicial fairness," a court must apply the doctrine in accordance with equitable principles, with careful attention to the facts of a given case. K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (2002) (alteration in original) (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n, 243 N.J. Super. 624, 630 (App. Div. 1990) (internal quotation marks omitted)). The doctrine's equitable nature "bar[s] its application where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." Id. at 70 (emphasis omitted) (alteration in original) (quoting Pressler, Current N.J. Rules, cmts. 1 & 2 on R. 4:30A (2002)). "In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties." Wadeer, 220 N.J. at 605.
>
> [Dimitrakopoulos, ___ N.J. ___ (slip op. at 25) (alterations in original).]

A-0887-16T2

"Because a violation of the entire controversy doctrine may result in the preclusion of a claim, a court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 241 (App. Div. 2002). "Thus, the entire controversy doctrine does not apply to unknown or unaccrued claims." DiTrolio, 142 N.J. at 273-74. Nor does the doctrine apply to preclude a successive action if the previous action did not result in an adjudication on the merits. See Arena v. Borough of Jamesburg, Middlesex Cty., 309 N.J. Super. 106, 110-11 (App. Div. 1998).

Applying these precepts to the circumstances here, we conclude the trial court mistakenly exercised its discretion in applying the entire controversy doctrine to bar Meagan's claims. Based on our review of the complicated factual and procedural history of this matter, we conclude that the totality of the circumstances and the equities at play weigh against the application of the entire controversy doctrine.

In weighing the equities, we find that Meagan did not have a fair and reasonable opportunity to litigate her interests in the previous action in the Probate Part. There is no indication in the record that Meagan was granted intervenor status in the trial court. Indeed, Meagan contends she was never

served with Archetto's complaint, and Archetto does not dispute the lack of service.[11] To be sure, Meagan turned eighteen years old on the day Archetto filed her complaint, and Meagan made some attempts to intervene in the Probate Part litigation. But as a non-party, Meagan did not have an actual opportunity to litigate her interests in the trial court. Simply being aware of the litigation and having the opportunity to attend trial does not amount to having a fair opportunity to litigate her claims.

Likewise, although Meagan was granted intervenor status in the previous appeal and filed some unsuccessful motions, that appeal was never adjudicated on the merits. The dismissal of the appeal and cross-appeal bore no responsibility for Meagan, as Anthony and Archetto failed to file the necessary transcripts.

Moreover, we find that Meagan's interests may not have been adequately protected in the previous litigation. In this regard, Judge Batten specifically acknowledged that it appeared that it was Catherine's intent that the property would pass to Meagan. The unexecuted draft will provides additional support

_____

[11] Notably, Archetto's affidavit in support of her motion for summary judgment does not aver that Meagan obtained intervenor status in the trial court, instead focusing on the facts that Meagan was aware of the litigation because her parents were parties, and that Meagan was over eighteen years old by the time of trial.

that it may have been Catherine's intent that the property would pass to Meagan. Although Anthony and Santiago were taking the position that the property should pass to Meagan in the Probate Part action, they each also had their own independent interests in that litigation. Santiago successfully obtained a constructive trust for the $160,000 she contributed to the property, and Anthony unsuccessfully defended allegations that he had inappropriately retained Catherine's assets. For these reasons, it does not appear that Meagan's interests were adequately protected by the parties in the Probate Part action.

Furthermore, in the instant Law Division action, Meagan is attempting to vindicate interests independent of becoming the beneficiary of the property. For example, she seeks damages to compensate her for funds that were allegedly withdrawn from her trust account and used to pay off the mortgage on the property and to fund construction. In this respect, Meagan's interests further diverge from the interests of her parents in the previous litigation.

In sum, when considering the totality of the circumstances, we find that the interests in party fairness predominate. Because the record does not support that Megan had a reasonable opportunity to litigate her interests in the previous Probate Part action, we conclude that the entire controversy doctrine should not be applied to bar Meagan's claims.

A-0887-16T2

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0887-16T2